# WILLIAM A. MATHIAS

*vs.*

# CHARLES E. FOWLER, Administrator.

*Deposits in savings banks:* entered on account of owner *"or another, or either of them"; retention of book; no perfected gift. Trusts: creation of——.*

The words *"in trust"* are not necessary to indicate an intention to create a trust, nor are they necessary to a valid declaration of a trust with a power of revocation. p. 665

But in order to establish a declaration of trust there must be clear evidence of an intention to transfer a present interest to the *cestui que trust.* p. 665

And where one who has, or places, money in a savings bank "in account" with himself or another, "or the survivor of them," and retains the possession of the deposit book, such facts, of themselves, raise no intention of any trust. p. 667

Where the owner of money in a savings bank has the same entered "in account with" himself or another, "or either of them," retains possession of the deposit book, and may withdraw the deposits at any time, such entry does not operate as a perfected gift. p. 667

*Decided January 13th, 1915.*

Appeal from the Circuit Court for Carroll County. In Equity. (THOMAS, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Charles O. Clemson* and *Guy W. Steele,* for the appellant.

*Jas. A. C. Bond* and *Francis Neal Parke,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

After the hearing of this case in the Circuit Court for Carroll County, sitting in equity, an opinion was filed and decree entered directing the payment over of the fund, which had been deposited in Court under a bill of interpleader, to Charles T. Fowler, administrator of William R. Fowler.

The opinion of JUDGE THOMAS covered the facts and law applicable to the case with such thoroughness that, unless that learned judge fell into some error, in the judgment of this Court, it would be superfluous to say over again what he has so well said.

A careful examination of both the facts and the law disclose no such error, and this Court is clearly of opinion that his conclusions were correct, and the decree appealed from will be affirmed.

This Court also adopts his opinion as its opinion in this case, and accordingly appends that opinion hereto.

*Decree affirmed, with costs.*

The following is the opinion delivered by THOMAS, C. J., in the Court below, which was adopted by the Court of Appeals:

On the 22nd of January, 1906, William R. Fowler deposited in the Union National Bank of Westminister the sum of $2,000.00 in what was called an "interest account," at three per cent interest, and the bank delivered to him a book in which said deposit was entered, and which contained a

contract signed by the said Fowler and one of the clerks of
the bank for the cashier. Among the provisions of the con-
tract is the following: "That no deposit for entry in this
book or upon the terms herein set forth, will be received, and
no money deposited in said bank and entered in this book
shall be withdrawn unless the book is produced at the bank
at the same time and the proper entry is made therein by
some officer of the said bank," and the contract further pro-
vided, "That the following provisions, conditions and agree-
ments are to be binding upon all persons claiming said funds
through, from or under me," and "That the privilege is ex-
pressly reserved to and retained by the bank to return to the
depositor the sums deposited under the above conditions, or
to discontinue the payment of said interest thereon at any
time after the expiration of four months' notice in writing
given by the bank to the depositor."

The bank book was numbered 119, and some time after the
account was opened it was changed in the bank book so as to
make it read: "The Union National Bank of Westminster
in account with W. R. Fowler or Charles E. Fowler or the
survivor of them." A number of other deposits were made
in this account, the last credit being, "1912, June 1st Int.
to June 1st, 1912, $28.50," the account also shows the
amounts withdrawn, the last being, "June 1st, 1912, Self,
$28.50.

The account referred to was closed June 1st, 1912, and a
new account was on that day opened for the balance therein,
amounting to $1,900.00. The new book was numbered 119,
and the entry in the book is: "The Union National Bank of
Westminster in account with W. R. Fowler or Wm. A.
Mathias or either of them." The book also contained an
agreement like the one we have already referred to, signed
by W. R. Fowler and James Pearre Wantz, assistant cashier.

Mr. Wantz, who is now the cashier of the Union National
Bank, states the circumstances under which the last men-
tioned account was opened as follows: "Mr. Fowler came in
with the book marked Exhibit No. 1F (the book referred to

above as containing the account opened in 1906), and said
he wanted to draw the interest on that book and wanted to
know if he couldn't change the account so that William A.
Mathias could get the money in case anything happened to
him, Billy Fowler. He said his brother, Charles E. Fowler,
was drinking and onery and he wasn't entitled to the money
and he didn't want him to have it, and that Will Mathias
had helped him to make part of it, that he was entitled to it,
and that he wanted him to have it, and asked if I could fix
it that way. At the same time he said he wanted the same
number of books and the account to run as it had before,
with the exception of the names changed." Mr. Wantz also
says that Mr. Fowler did not at the time say anything about
the interest, and that he, the witness, opened the new book
"with the balance of $1,900.00 in the name of William R.
Fowler or William A. Mathias or either of them"; and fur-
ther testified: "Mr. Fowler wanted the same book and the
same number, but wanted the names changed. We don't
scratch any names on books in the bank, and the only way
to open the account was to give him a new book with the
same number and start the new book with the same balance in
the old book."

Clinton R. A. Fogle, who in 1912 was teller of the Union
National Bank and who was in the bank at the time Mr.
Fowler came there, testified: "He (Mr. Fowler) came in
and said to Pearre Wantz; Mr. William R. Fowler came into
the Union National Bank and said to Pearre Wantz that he
wanted to draw the interest due on his deposit in the sav-
ings account and that he wanted to change it to the name of
himself and Wm. A. Mathias instead of his brother. I don't
know whether he said his brother, but he said instead of Chas.
E. Fowler. He said the reason he wanted to change it, he
said his brother was onery and didn't deserve anything, and
that he thought a good bit of this boy and he wanted him to
have that money in case he died." Mr. Fogle was asked if
anything was said by Mr. Fowler about the interest on the

$1,900.00 deposit of June 1, 1912, and replied: "He said—I don't know if I recall what he said about the interest or not—he said he would draw the interest." On cross-examination, when asked to state in his own way without interruption the conversation between Mr. Fowler and Mr. Wantz, the witness said: "Mr. Fowler came in the Union National Bank and said he wanted to draw the interest due on his deposit and he wanted to change it, and asked Mr. James Pearre Wantz if he could fix it so that the money standing in his name on that book could be changed to read, himself and William A. Mathias or the survivor of them; that Charles E. Fowler was getting onery and didn't deserve anything. He also said that he liked this boy and he wanted him to get that money in case anything happened to him."

It appears from the further evidence in the case that after the second account was opened both books were delivered by the bank to Mr. Fowler and remained in his possession to the time of his death, in November, 1913, and that he collected the interest on the $1,900.00 during his life. After his death the Union National Bank filed a bill of interpleader against William A. Mathias and Charles E. Fowler, administrator of William R. Fowler, both of whom claim the fund deposited in the second account, and said deposit and accrued interest thereon, less the costs, was, under the order of this Court, paid into Court.

In the case of Taylor vs. Henry, 48 Md. 550, the deposit in the Eutaw Savings Bank of Baltimore of $1,850.00 was to the credit of "Joseph Henry, Margaret Taylor, and the survivor of them, subject to the order of either." After the death of Joseph Henry a bill was filed by his administrator against Margaret Taylor praying for an account of the money drawn by her from the bank after the death of Joseph Henry. The Court held that the terms of the deposit did not import a gift *inter vivos,* and that Margaret Taylor was not entitled to the balance of said deposit remaining in the bank at the death of Joseph Henry. In disposing of the case

JUDGE ALVEY said: "Here the deposit was in the joint names of the deceased and his sister, and the survivor of them, but subject to the order of either. Having thus retained the power to draw out the money, the deceased did not divest himself of dominion and control over the fund. He could have drawn out every dollar the day after the deposit, or at any time up to the moment of his death, and applied it in any manner he might have thought proper. It is not contended that the sister had the least right or interest in the money before the deposit; nor is it contended that she acquired any interest therein otherwise than by the supposed gift of the brother; and the only evidence relied on to support the *factum* of the supposed gift, is the form of the entry in the bank-book. But, as will be observed, there are no terms in the entry that import of themselves an actual present donation by the brother to the sister; and the dominion retained by the brother over the fund enabled him to displace and utterly destroy all power conferred upon the sister in respect to the fund. As the mother's name had been erased and that of the sister inserted, so the name of the sister could have been erased, without the slightest doubt of the brother's right to do so. The sister never exercised any power or control over the fund during the life of the brother. It was only after his death that she attempted to assert right and dominion over it; and then by the supposed right of survivorship. But, if the supposed gift was not perfect and irrevocable during the life of the donor, it could become so after his death only as a *donatio mortis causa;* and from the form of entry, and the facts of the case, it is impossible that the transaction can be allowed to prevail as a *donatio mortis causa."*

In *Dougherty v. Moore,* 71 Md. 248, Lawrence McDonald opened an account in the Eutaw Savings Bank, and thereafter the name of his wife was added so as to make the entry in the pass-book and in the ledger of the bank read as follows: "Lawrence McDonald, Sarah McDonald and the survivor, subject to the order of either."

Thereafter, on the 4th of January, 1876, the following entry was also made: "In consideration of my natural love and affection for my wife, Sarah McDonald, I give to her all the money belonging to me credited or to be credited in this book, and I direct the same to be paid to her, and her receipt shall be good for the same. Lawrence (his X mark) McDonald."

The only question in that case was whether there was a valid gift by the husband to his wife of the money held on deposit by the bank, and in disposing of that question the Court said: "All agree that to constitute a valid gift between living parties, or gifts *inter vivos,* as they were distinguished by the civil law, there must be a delivery of the subject-matter of the gift, with the intent on the part of the donor to transfer the right of property to the donee, or to someone for his use. The donor must renounce, and the donee must acquire, the title and interest in the property given. So long as there is a *locus penitentiæ* in the donor, a right to change his mind, to modify, or revoke it, the gift is incomplete. * * * Although the husband in this case did not mean to relinquish his right to use the money on deposit during his life, he did mean that whatever remained in the bank, at the time of his death, should go to his wife if she survived him. But these entries can not operate as a testamentary disposition of property, because they are not executed as the law requires. We are of opinion, therefore, that the money held on deposit by the Eutaw Savings Bank belongs to the administrator of the husband, and not to the administrator of the wife."

In the case of *Whalen* v. *Milholland,* 89 Md. 199, the deposit in the Savings Bank of Baltimore was entered in the pass-book as follows: "Elizabeth O'Neill and Mary Whalen. Joint owners. Payable to the order of either or the survivor." The money was deposited by Elizabeth O'Neill, and after her death was claimed by Mrs. Whalen. There was evidence other than the entry in the pass-book to show

that Elizabeth O'Neill intended that Mary Whalen should have whatever remained in said account at her death, but the Court held that she was not entitled to it, and in disposing of the case said: "This Court has frequently had occasion to consider cases growing out of similar deposits. There ought not now to be, even if there ever was, any uncertainty about the legal principles which should control the decision of such a controversy. The money being the money of the depositor, the fundamental question always is, has a valid and effective gift been made of it to another? To make a gift perfect and complete, there must be an actual transfer by the donor of all right and dominion over the thing given; and there must be an acceptance by the donee or by some competent person for him. In addition to this, it is essential to the validity of such a gift, that it should go into effect, or in other words transfer the property, at once and completely; for if it has reference to a future time when it is to operate as a transfer, it is nothing more than a promise without consideration, and cannot be enforced, either at law or in equity. Until the gift is legally perfect and complete, a *locus penitentiæ* remains, and the owner may make any other disposition of the property that he or she may think proper."

In the case at bar, William R. Fowler retained the possession of the bank-book, and could, at any time after the account was opened, have withdrawn every dollar deposited therein. He did not part with the possession of the subject-matter of the gift, and it is clear both upon reason and authority that there was no perfected gift to William A. Mathias of the fund deposited in said account. We understand this to be conceded by counsel for the plaintiff, William A. Mathias, but they insist that the entry in the bank-book under the circumstances disclosed by the evidence amounted to a declaration of trust in favor of Mr. Mathias, and they rely upon the cases of *Milholland* v. *Whalen,* 89 Md. 212; *Littig* v. *Mt. Calvary Church,* 101 Md. 494; *Harris Banking Co.* v. *Miller,* 1 L. R. A. (N. S.) 790; *Booth* v.

*Oakland Bank of Savings,* 122 Cal. 19, 54 Pac. 370, and *Drinkhouse* v. *German Savings and Loan Society,* 118 Pac. 953.

In *Milholland* v. *Whalen, supra,* entry in the pass-book was: "Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor." This entry was made at the instance of Miss O'Neill, and the officer of the bank testified that the entry in the book embodied the instructions given by Miss O'Neill at the time the account was opened. A by-law of the bank provided that "every deposit made by one person for the benefit of another person shall be expressed to be *'in trust,'* and no deposit shall be received, or be expressed to be received, from one person *'by'* another person, or by one person *'for'* another person." There the Court held that the deposit referred to constituted a valid declaration of trust, and CHIEF JUDGE McSHERRY said, "that when a trust is thus created the rights of a beneficiary become fixed, even though the settler retains the bank-book in his possession. * * * We have, then, a valid declaration of trust impressed upon the funds in bank and the bank holding them, not as trustee, but for the trustee, with knowledge of the conditions of the trust. The trustee was seized of the money for the use of herself and her sister, as joint owners of the equitable interest; and both were authorized to draw the funds upon producing the bank-book. This is not all. The declaration of trust transferred to the trustee the legal title for the benefit of the survivor of the two *cestuis que trustent,* as to the *balance* of the fund remaining in bank at the death of either."

In the case of *Littig* v. *Mt. Calvary Church, supra,* the entry in the books of the bank was: "Mt. Calvary Protestant Episcopal Church, subject to the order of Kate Littig, trustee, $500.00," and the Court held that a valid trust was thereby declared in favor of the church. In the course of

the opinion Judge Fowler, quoting from *Milholland* v. *Whalen,* said: "It is the donor's act which originates the trust and it is the intention with which he does the act that is material. The entry unexplained is a sufficient declaration of trust because it indicates an intention to establish a trust; but this may be rebutted."

In both of the above cases the Court held that the use of the words "in trust" was sufficient to denote an intention on the part of the depositor to create a trust. In the later case of *Baker* v. *Baker,* 123 Md. 32, funds were deposited in bank by the husband in the name of himself and his wife which, under the authority of *Brewer* v. *Bowersox,* 92 Md. 567, created a tenancy by the entireties in the funds, which could not be destroyed except by the joint act of the husband and wife, and to which the right of survivorship was incident. Upon the death of either the survivor was entitled to the funds. Thereafter the entries in the deposit books were changed so as to make the sums deposited payable at the death of the survivor to certain children named in the book in the amounts therein specified. Other evidence in the case clearly indicated that the entries were so made for the purpose of securing to the husband and wife the interest on said deposits during their joint lives and the life of the survivor and to provide for the payment of the amounts deposited to their children after the death of the survivor, and the Court held that a trust was thereby created, and that after the death of the survivor the funds belonged to the parties named in the bank-books.

In the case at bar there is nothing in the entry in the bank-book to indicate that William R. Fowler intended to create a trust. The other evidence in the case clearly shows that he desired William A. Mathias to have the fund if anything happened to him, or at his death, but there is nothing to indicate that he intended by the entry in said bank-book to transfer to William A. Mathias any present legal or equitable interest in the fund. The effect of a declaration of trust is

to vest in the *cestui que trust* the equitable title to the subject matter of the trust, and I think the evidence shows that Mr. Fowler did not intend by the entry in the bank-book to part with any interest he had in the amount deposited. The entry in the first account was "W. R. Fowler or Charles E. Fowler or the survivor of them," and when he went to the bank in June, 1912, it was for the purpose of having the name of William A. Mathias substituted for that of Charles E. Fowler. He evidently did not regard the entry in the first book as a declaration of trust in favor of Charles E. Fowler, or understand that he had by said entry transferred to Charles E. Fowler an equitable interest in the fund. The only inference to be drawn from the entry in the book and other evidence of the case is that he intended the fund deposited to belong to William A. Mathias after his death but that does not justify the inference that he intended to create a trust in favor of Mr. Mathias. I do not mean to hold that the words "in trust" are necessary to indicate an intention to create a trust, or that there cannot be a valid declaration of trust with a power of revocation. But in order to establish a declaration of trust there must be clear evidence of an intention to transfer a *present* interest to the *cestui que trust,* and this requirement, under the decisions in this State, is not gratified by evidence which merely shows that a depositor intended the fund to belong, after his death, to another, otherwise every deposit in the name of the depositor and another and the survivor would amount to a declaration of trust in favor of the survivor. In the case of *Taylor* v. *Henry, supra,* where the entry was, "Joseph Henry, Margaret Taylor, and the survivor of them subject to the order of either," JUDGE ALVEY said there was no evidence of an intention to create a trust, notwithstanding the entry in the bank-book indicated that the survivor was to receive whatever remained in the account. The Court there said: "For the purpose of establishing such trust, however, the evidence must be clear and unmistakable both of the intent and of the execution of that intent." In *Dougherty* v. *Moore, supra,*

where the terms of the entry in the bank-book were even more explicit, it was not suggested that they amounted to a declaration of trust in favor of Mrs. McDonald, and in *Whalen* v. *Milholland, supra,* CHIEF JUDGE McSHERRY said: "Whilst it may be conceded that Miss O'Neill intended this fund to belong to her sister should the latter survive her— and there are quite a number of her declarations in the record indicating that she did—still, the method resorted to by her for the accomplishment of that end, cannot, so far as the entry in the book is concerned, be treated as efficacious. The entry did not constitute a valid gift *inter vivos,* as we have already pointed out; and it cannot, for obvious reasons which need not even be suggested, operate as a testamentary disposition of the fund. The money, therefore, belonged to the original owner at the time of her death." The evidence relied upon by the plaintiff in the case at bar to show an intention on the part of William R. Fowler to create a trust are his statements to Mr. Wantz and Mr. Fogle that he wanted William A. Mathias to have the money if anything happened to him, or at his death. In *Whalen* v. *Milholland, supra,* it was conceded that Miss O'Neill intended the fund to belong to her sister should the latter survive, and yet the Court held that Mrs. Whalen was not entitled to it. In view of that decision I would not be justified in holding in the case at bar that the entry in the bank-book and the statement of Mr. Fowler to the officers of the bank amounted to a declaration of trust. That the deceased intended Mr. Mathias to have the fund referred to in case he survived him, I think, is very clear, but under the authorities referred to the record in this case does not contain evidence sufficient to establish a declaration of trust.

In the cases of *Booth* v. *Oakland Bank of Savings, supra,* and *Drinkhouse* v. *German Savings and Loan Society, supra,* the banks agreed to hold the funds and to pay them after the death of the depositors to the parties named to receive them, and the Court held that under the terms of the deposits the banks became the trustees of the funds there involved.

In this case, apart from any question as to the authority of the bank to act as trustee, the terms of the contract signed by Mr. Fowler and the officer of the bank clearly indicate that the bank did not intend to assume such a responsibility, for it is therein provided, "That the privilege is expressly reserved to and retained by the bank to return to the depositor the sums deposited under the above conditions, or to discontinue the payment of said interest thereon at any time after the expiration of four months' notice in writing given by the bank to the depositor."

Counsel for the plaintiff also rely upon the provisions of section 73 of Article 11 of the Code of 1912. That section, however, has no bearing upon the question we are now considering. The bank did not pay the fund in accordance with the terms of that section, and has no interest in this controversy. The only inquiry here is which of the two claimants is entitled to the fund, and the section of the Code referred to does not shed any light upon that question, or determine the rights of the parties. *Gardner* v. *Toler,* 89 Atl. 1020.

For the reasons stated I must hold that the evidence in this case fails to establish a perfected gift of the fund in question to William A. Mathias or a declaration of trust in his favor, and that notwithstanding the deceased intended the fund to belong after his death to Mr. Mathias the method resorted to to accomplish that end was not effective.

By agreement of counsel the fund, amounting to $1,857.70, was with the consent of the Court, deposited by the Clerk of this Court in the Farmers' & Mechanics' National Bank on interest, and I will direct that the same be paid by the clerk to Charles T. Fowler, administrator of William R. Fowler.