MORTIMER W. WEST ET AL. *v.* THOMAS L. A. MUSGRAVE.

MORTIMER W. WEST ET AL. *v.* J. WARREN BURGESS.

[Nos. 46, 47, October Term, 1927.]

*Decided December 8th, 1927.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edgar Allan Poe* and *Isaac Lobe Straus,* for the appellants.

*Simon E. Sobeloff,* with whom were *Roland R. Marchant, Enos S. Stockbridge, William M. Kerr,* and *Daniel Ellison,* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

There were two petitions filed in the Baltimore City Court by the appellants as citizens and taxpayers of Baltimore, to test the qualifications and eligibility of the respective appellees, Thomas L. A. Musgrave and J. Warren Burgess, to membership in the City Council of Baltimore, to which they had been elected.

The petitioners alleged that the appellees, at the time of their election, did not possess the property qualifications and had not paid taxes thereon one year prior to such election, as required by section 210 of the Baltimore city charter; that the appellees had been returned elected as members of the City Council at an election held May 3rd, 1927, and on May 19th, 1927, presented themselves to the Honorable William F. Broening, Mayor of Baltimore, who thereupon administered to them the oath required to be taken by members of the City Council; that on June 6th, 1927, at a session of the City Council, by a vote of eleven to eight the appellees were held to be duly qualified according to law; and the "petitioners, feeling aggrieved by said finding and decision, have brought this proceeding in order that the alleged disqualification of the defendants may be judicially determined," and the petitioners pray for writs of mandamus commanding the appellees to vacate and cease exercising any of the functions of their offices.

On the petitions, rules were laid on the defendants requiring them to show cause on or before June 23rd, 1927, why writs of mandamus should not issue as prayed. On June

42

22nd the defendants demurred to the petitions, and the City Court passed orders extending the time for answering until fifteen days after the determination on the demurrers. Upon argument on the petition and demurrer, the City Court, Judges Owens, Frank, and Stanton, filed a very able and exhaustive opinion, in which they held that section 217 of the City Charter furnished the petitioners a specific and adequate remedy, and for that reason mandamus would not lie, and orders were entered sustaining the demurrers and dismissing the petitions, from which these appeals were taken.

It is contended by the appellants that mandamus is the proper and only effectual remedy to try the title of the appellees to their respective offices, while the appellees contend that the Baltimore City Charter provides a specific and adequate, and the exclusive, remedy.

The City Court expressed some doubt of the propriety of a demurrer in view of the provisions of article 60 of the Code, prescribing the procedure in mandamus, whereby the defendant, by a day named in the order on the petition, shall file an answer "fully setting forth all the defenses upon which he intends to rely" (section 3). The City Court said the demurrers were "recognized by both sides to be the appropriate pleading and the court, therefore, so accepts it." This court, however, has gone farther than that in the case of *Pumphrey v. Baltimore,* 47 Md. 145, 147, where Judge Bartol said: "The defendant demurred to the petition and by consent of counsel a *pro forma* judgment was rendered for the defendant, reserving the right of appeal. The question presented is the sufficiency of the matters alleged in the petition to entitle the appellant to the writ." While the practice of receiving demurrers to petitions in mandamus proceedings has been recognized by this court, it has been held in *Legg v. Annapolis,* 42 Md. 203, 223, *Sudler v. Lankford,* 82 Md. 142, 148, and in *Beasley v. Ridout,* 94 Md. 641, 648, that a demurrer cannot be taken to admit the facts alleged in the petition, and if overruled the writ cannot be peremptorily granted without any further proceedings.

Section 210 of Baltimore City Charter fixes the citizen-

ship, age, residence, property, and tax qualifications of members of the City Council, and section 217 provides, among other things, that "the City Council shall judge of the election and qualification of its members, subject to appeal by petition of the party aggrieved to the Baltimore City Court." These provisions were adopted by a vote of the people of Baltimore November 7th, 1922, and authorized by article 11A of the State Constitution which, by section 4, provides that "from and after the adoption of a charter under the provisions of this article by the City of Baltimore, or any county of this State, no public local law shall be enacted by the General Assembly for said city or county on any subject covered by express powers granted as above provided." This, then, is a statute which the people of Baltimore have adopted for their government, whereby they prescribe certain qualifications for those charged with the administration of their public affairs, and a procedure for the testing of their qualifications. The people of Baltimore designated the Baltimore City Court as the tribunal to which "persons aggrieved" at the action of the City Council should go for a judicial determination of their grievances, if they felt the council had accepted as a member one who was not qualified, or rejected one who was qualified.

There is abundant authority for saying that where the law makes a city council the judge of the qualification of its members, it has exclusive jurisdiction, not subject to review by the courts. *Seay v. Hunt,* 55 Tex. 545; *People v. Harshaw,* 60 Mich. 200; *Foley v. Tyler,* 161 Ill. 167; *Stearns v. Wyoming,* 53 Ohio St. 352; 7 *McQuillan on Municipal Corporations,* sec. 471, the latter citing *Spitzer v. Martin,* 130 Md. 428 as authority for this rule. Section 217, while making the City Council the judge of the qualifications of its members, qualifies the rule laid down in the authorities mentioned, and makes the City Court the tribunal to which appeals of persons aggrieved may be taken, so that between the Council and the City Court is provided the machinery for testing the qualifications of councilmen. We would be anticipating a case by passing on the question as to whether there

can be an appeal in such a case to this Court, but it is certain that such a proceeding must be initiated in the City Council, with the next stage an appeal to the City Court. For us to decide otherwise would be to overthrow a charter which, in addition to the force of a constitutional provision authorizing it, has the endorsement of the people, who have adopted this as one of the provisions for their government.

Although the appellants have cited scores of authorities to the effect that mandamus is an appropriate remedy to oust an ineligible from office, it is very evident that their contention is based upon one sentence in the case of *Hummelshime v. Hirsch,* 114 Md. 39, 50, which is: "It seems, therefore, that mandamus is not only the appropriate remedy, but that, in this state, it is the only remedy by which one may be removed from an office to which he is not legally entitled." A reading of the opinion shows that this was the conclusion of a discussion by Judge Thomas, who wrote the opinion, of the scope of quo warranto and mandamus proceedings, and that in the opinion of the court, mandamus and not quo warranto was the only remedy. The court was not then discussing the merits of mandamus as against a statutory proceeding, because there was no provision in the charter of Cumberland to test the qualifications of members of the council; hence the adoption in the *Hummelshime* case of the common law remedy of mandamus. In that opinion, quoting from *High on Extraordinary Legal Remedies,* it is said: "The test to be applied * * * is to inquire whether the party aggrieved has a clear, legal right, and whether he has any other adequate remedy, since the writ only belongs to those who have legal rights to enforce and who find themselves without any appropriate legal remedy." To the same effect he quotes from *Poe on Practice.* It is apparent, therefore, that this court, in the *Hummelshime* case, declared mandamus to be the only remedy available because in such a case, at that time, in this state, there was no other adequate legal remedy.

It has been held in this state that mandamus will not lie to compel a public officer to perform a public duty where the law provides an adequate remedy. *Bembe v. Anne Arundel*

*County,* 94 Md. 330; *State v. Baltimore County,* 46 Md. 621; *Spitzer v. Martin,* 130 Md. 428, 432.

The principle involved in this case is very clearly set forth in the case of *Commonwealth v. Garrigues,* 28 Pa. St. 9, wherein the Attorney General had caused a writ of *quo warranto* to be issued against William Garrigues to show by what warrant he claimed to exercise the office of alderman in Philadelphia, to which he claimed to have been elected. The Act of February 2nd, 1854, provided that the returns of all municipal elections "shall be subject to the inquiry and determination of the Court of Common Pleas of the County of Philadelphia, upon the complaint of fifteen or more of the qualified voters of the proper ward or division." The Supreme Court of Pennsylvania here said: "On the merits, the judgment of the Common Pleas, by the terms of the Act of 1854 is final and irreversible. * * * If the election had been contested in the manner prescribed by the statute, the decree of the Common Pleas could not have been re-examined in this form of action. * * * The remedy prescribed by the statute must be pursued."

It was very earnestly and very ably argued, in support of the proposition laid down in the *Hummelshime* case and sought to be applied in this case, that mandamus offered the only means whereby an ineligible could be so adjudicated and then ejected from his office. We fail to see the force of this argument. If the City Court declares, after hearing, that a councilman is disqualified, from that moment he is no longer a councilman. If he assumed to act he would be without a vote, like any other intruder.

It has been suggested by the petitioners that if their petitions cannot be treated as petitions for mandamus, then they may properly be considered as "appeals by petition" under section 217 of the City Charter. They are in this court as petitions for mandamus and cannot be otherwise considered here. Mandamus is initiated in *nisi prius* courts, and the judgment of those courts can be appealed to this court. The proceeding under section 217 is initiated in the City Council and its action may be appealed from to the City Court, and

if this court ever has jurisdiction in these cases, which we are not now deciding, it could only be after action by the City Court on "appeals by petition" from the City Council. Another reason why this would be bad practice—the petition for mandamus might be filed in some court other than the City Court. The City Court is the only one having jurisdiction on appeal, and if addressed to another court it could only be treated as a petition for mandamus, for such other court could not try appeals under section 217 of the City Charter.

*Judgments in Nos. 46 and 47 affirmed, with costs.*