FANNIE R. McDEVIT, Administratrix, *v.* LUCY E. SPONSELLER et al.

[No. 15, January Term, 1931.]

*Decided March 19th, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Reno S. Harp* and *Milton G. Urner, Jr.,* for the appellant.

*William M. Storm,* with whom was *Frank L. Stoner* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

This controversy grows out af a savings bank deposit of $4,391.16 in the Fredericktown Savings Institution of Frederick, in the name of "James B. Sponseller, in trust for himself and Lucy E. Sponseller, joint owners; subject to the check of either, balance at the death of either to belong to survivor."

James Bradley Sponseller, with his wife Isabella, lived for many years near New Market, in Frederick County. After the death of his wife, in or about 1918, he continued to live alone in the home which had been occupied by them until September 5th, 1928, when he, at the age of seventy-seven years, was removed by his physician, Dr. Roop, to the hospital at Frederick, to be there treated for "a prostatic enlargement." His condition at that time was regarded by Dr. Roop as "grave." It was while he was in the hospital, on September 27th, that the above mentioned deposit was made. Prior to that, the deposit had been in the name of "J. B. and Isabella Sponseller," his wife. James B. Sponseller died, leaving no children or descendants, his heirs and next of kin being a half-brother, Jacob Wesley Sponseller, the husband of Lucy E. Sponseller, and two half-sisters, Fannie R. McDevit and Maria Stull. After the death of James B. Sponseller on November 5th, 1928, Lucy E. Sponseller, as survivor, on the 7th day of November following the last named date, withdrew said deposit and opened another account in the Fredericktown Savings Institution in her own name. Thereafter, letters of administration were granted upon the estate of James B. Sponseller to Fannie R. McDevit, whereupon she filed her bill against the appellees, Lucy E. Sponseller, Jacob W. Sponseller, and the said Savings Institution, asking that Lucy E. Sponseller be ordered and directed to pay over to Fannie R. McDevit, as administratrix, the amount of the deposit withdrawn by her.

The bill alleged the mental incapacity of James B. Sponseller to transfer the deposit or to create the trust declared

therein. It also alleged, in substance, that the transfer and the declaration of the trust was in consequence of the undue influence exerted upon him by Lucy E. Sponseller, and that it was never the intention of James B. Sponseller, in making the transfer of the deposit, to create a trust by which the balance thereof, upon his death, should become the property of Lucy E. Sponseller, but that the deposit was made as a matter of convenience in the payment of expenses incurred by him during his illness. These allegations of the bill were denied by Lucy E. Sponseller in her answer to the bill, and the chancellor, after hearing evidence upon issues so presented, dismissed the bill. It is from his decree dismissing the bill that this appeal was taken.

The evidence fails to sustain the allegation of the incapacity of James B. Sponseller to make the transfer, or create the trust mentioned in the deposit, or to show that the deposit was made, as it was, because of any undue influence exerted upon him by Lucy E. Sponseller.

It is now well settled by the many decisions of this and other courts that "where a person intends to give property to another, and vest that property in trustees, and declares a trust upon it in favor of the object of his bounty, by such acts, the gift is perfected, and the author of the trust loses all dominion over it; and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing. And the cases go the length of maintaining that where the author of the gift retains the legal dominion over the subject of the gift in himself, but fully and completely declares himself to be trustee of the property for the purposes indicated, there he will be treated as trustee, and the object of his bounty will be given the benefit of the trust. In all such cases, the declaration of trust is considered in a court of equity as equivalent to an actual transfer of the legal interest in a court of law; and, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration." *Taylor v. Henry,* 48 Md. 550; *Milholland v. Whalen,* 89 Md. 212, 43 A. 43, 45; *Snader v. Slingluff,* 95 Md. 356, 52 A.

510; *Littig v. Vestry of Mt. Calvary Church,* 101 Md. 494, 61 A. 635; *Baker v. Baker,* 123 Md. 41, 90 A. 776; *Mathias v. Fowler,* 124 Md. 655, 93 A. 298; *Stone v. Nat. City Bank,* 126 Md. 231, 94 A. 657, 660; *Farmer v. Farmer,* 137 Md. 69, 111 A. 464; *Coburn v. Shilling,* 138 Md. 177, 113 A. 761; *Pearre, Executor, v. Grossnickle,* 139 Md. 274, 115 A. 49; *Gimbel v. Gimbel,* 148 Md. 185, 128 A. 891; *Sturgis v. Citizens' Nat. Bank,* 152 Md. 654, 137 A. 378.

The entry of the deposit in this case is in the language of the entry in *Milholland v. Whalen, supra;* the only difference being in the names of the parties therein. In that case, Chief Judge McSherry, speaking for the court, said: "Such a deposit as we are now dealing with constitutes a valid declaration of trust, in the absence of contravening proof," or, as otherwise expressed by him in that opinion, "the entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust; but this may be rebutted." *Baker v. Baker, supra; Gimbel v. Gimbel, supra.* It being shown that the entry in this case is in form a sufficient declaration of trust, we are now to determine from the evidence whether it was the intention of the donor to create the trust. The question of intention, as we have said, may be proved by parol without the aid of writing. *Milholland v. Whalen, supra; Coburn v. Shilling, supra; Stone v. Nat. City Bank, supra;* and, as said by Judge Burke, when speaking for the court in the last-cited case, "trust relations will be implied when it appears that such was the intention."

The evidence reflecting upon the intention of James B. Sponsellor to create a trust was in substance as follows: At the time James was in the hospital, his brother Jacob was also there, and the latter was frequently visited by his wife, Lucy. Upon some of her visits to him, she would call in to see his brother, James. She had no conveyance of her own, and, as she lived a number of miles from Frederick, she was largely dependent upon her neighbors and friends to carry her to the hospital. Among these neighbors were Mrs. Main and Mrs. Carpenter. At the time the brothers were in the hospital, Mrs. Main's sister was there, whom she frequently

visited, and at times she asked Mrs. Lucy Sponseller to accompany her that she might see her husband. On one of these occasions, when also accompanied by Mrs. Carpenter, they visited James B. Sponseller. Mrs. Carpenter testified that she saw Mr. James B. Sponseller on two occasions, while at the hospital. She could not recall the dates of those visits. She went with Mrs. McDevit on the first occasion, and, on the second occasion, on Sunday afternoon, she went with Mrs. Main and Mrs. Lucy Sponseller. She testified that nothing was said by Mr. Sponseller about his finances on the first visit. When asked if anything was said by Mr. James about them on the second occasion, her reply was: "Yes, he said Mrs. Sponseller was always the one he looked up to for everything he was given and helped. He looked up to Mrs. Sponseller. Now he said he had come to the time he was going to repay her for all her trouble and kindness, 'the money that I have I'll make it over to myself and Mrs. Sponseller in the bank in our names and when I am gone it is absolutely Mrs. Sponseller's.' Q. Was anything said about the bank book, about where the bank book was or anything of that kind? A. I think she told him she had it. Q. Was anything said as to when this money was to be transferred? A. He asked her to call Dr. Roop to bring him in on Monday and they would fix it on Monday, the next day, that he felt he would fix it for him. Q. Mrs. Carpenter, when this was being said by Mr. Sponseller, what, if anything, did Miss Lucy say? A. She said to him, 'Brad, you don't mean for that money to be mine?' He said, 'I mean for it to be absolutely yours. You did all for me that was done, and my wife.'" There was nothing more said, and she did not get to see him any more.

Upon cross-examination, she was asked if she was invited by Mrs. Sponseller to go to the hospital. She replied: "No, sir; Mr. Sponseller was a member of our church. * * * We went up there to see him as members of our church. Q. Who invited you to go? A. Nobody. I asked Mrs. Main if I could go in in the afternoon." They went in Mrs. Main's automobile. She was then asked: "When you got into the room, did he first talk about his condition? A. Yes,

he did. Q. Who started the conversation then about the money A. Mr. Sponseller. Q. Nobody said a word? A. Nobody said a word to Mr. Sponseller. Q. Were any of the nurses in there? A. No, sir. Q. Nobody but you three? A. Us three, Mrs. Main, Mrs. Sponseller and Mr. Sponseller. Q. You all three are good friends of Mrs. Sponseller? A. I think I have been in Mrs. Sponseller's house about four times. I have known her for quite awhile."

Mrs. Main testified that she lived about half a mile from Mr. James Sponseller and about twice that distance from Mrs. Lucy Sponseller; she had visited Mrs. Sponseller, "but not often." She would go to see her sister at the hospital, and, while there, she, on occasions, visited Mr. James B. Sponseller, and in going to the hospital she would often carry Mrs. Lucy Sponseller, whose husband was also there, as "she had no other way to go. Q. Do you remember when Mrs. Carpenter was along? A. Yes. Q. Prior to that time, did Mr. Sponseller ever make any statements to you concerning Lucy or anything about his money? A. No sir, the second time he did that we were there, he told her to get Dr. Roop to go with her on Monday, that he had a $50 Liberty Bond and he wanted her to have it put on the bank book. Then he wanted it fixed for him and her individually, for Miss Lucy and Mr. Sponseller. Q. Did he say that? A. He said that she was the one that did for him, and that he wanted her to have it, and she says, 'You don't mean me?' He says, 'I surely do' and she says, 'No, you don't mean me to have it all?' He says, 'I surely do,' " and, when asked if anything was said about what Miss Lucy had done for his wife, she replied: " 'Yes, he said she had done lots for them during his wife's illness.' Q. When was Miss Lucy to bring Dr. Roop in? A. On Monday, the following day. Q. Do you remember anything said about a bank book? A. He told her to bring the bank book along."

On cross-examination she testified that she saw him once after that. She "took some oranges in to him, the Sunday school class had sent him oranges." On that occasion, nothing was said about money. She was asked who suggested the

visit on the occasion when she, Mrs. Carpenter, and Mrs. Sponseller called upon Mr. James B. Sponseller. "Was it you or Lucy Sponseller? A. I said to her you have no way to go in to see your husband, and I feel it is up to us to take you." She visited him but once thereafter when Mrs. Sponseller was not present.

Dr. E. P. Roop, a witness called by the plaintiff, testified that he carried James B. Sponseller to the hospital on September 5th, at which time he was turned over to the physicians of the hospital, and thereafter, it seems, ceased to be a patient of his. He saw him again on September 24th. On this occasion he was accompanied by Mrs. Lucy E. Sponseller. While there, he was shown a paper by the counsel of the plaintiff, upon which his name appeared as witness, and he was asked if that was his signature, and he said "Yes." This was a check of September 24th, 1928, of James B. Sponseller, signed by making his mark thereto, drawn upon the Fredericktown Savings Institution in these words: "Pay to the order of Jas. B. Sponseller & Lucy E. Sponseller $4,292.41 Four thousand, two hundred Ninety-two—41/100 dollars and charge to my account, interest deposit No. 427." Upon the back of the check was the following indorsement: "Credited to the account of the within named payee. Fredericktown Savings Institution, Frederick, Maryland, Endorsement Guaranteed."

This check was witnessed by "E. P. Roop" and "E. E. Supplee," the latter being a nurse in the hospital. The witness, Dr. Roop, said Mrs. Lucy E. Sponseller brought the check to the hospital, and she asked him to witness the check and to explain it to Mr. Sponseller, "I told him just as she told me, * * * and he said it should have been done long ago. Q. Not what she told you but what did you tell him? A. Well, it's been some time. I asked him whether he wanted his bank account made a joint account and he said he did—I don't know if that was the exact words, but that was the meaning of it—he said it should have been seen to long ago, and that was about all that was said. Q. Did you see any bank book there on that occasion? A. I believe I did, yes. Q.

Who had it? A. Mrs. Sponseller. Q. Never heard him say anything further? A. No, sir; and I know one thing, I would never have witnessed that if I knew there would have been any controversy over it."

On cross-examination, Dr. Roop testified that, on his way from the home of Mrs. Sponseller to the Frederick Hospital, they stopped at the Fredericktown Savings Institution. While there, Mrs. Sponseller saw Mr. Snook, an employee of the bank, with whom she talked about the transfer of the account, and Mr. Snook prepared for her a paper, the check, which was carried to the hospital and there signed by Mr. Sponseller. After leaving the hospital, Dr. Roop again accompanied Mrs. Sponseller to the bank, where the deposit was transferred and the new account opened. The nurse, E. E. Supplee, was called in simply to witness the signing of the check by Mr. Sponseller, and was in the room only for a short time. She did not hear or recall any of the conversation between him and Dr. Roop.

Mrs. Lucy E. Sponseller testified that she had the bank book; that she got it when Mr. James B. Sponseller was taken to the hospital. When asked who told her to get it, she answered, "He told me," but this answer was excluded upon objection being made thereto, and she was not permitted to say who was present at the bank when the transfer was made.

Mr. Griffin, the teller of the bank, testified he was at the bank in the afternoon when Mr. Sponseller returned with the check. She at the time had the bank book of the account with James B. Sponseller and the check of Mr. Sponseller, and it was he who transferred the deposit and made the entries in the book.

If we are to find that it was the intention of J. B. Sponseller to create the trust in this case, it must be found in the evidence above, which in our opinion warrants that conclusion.

It is shown by the uncontradicted evidence of both Mrs. Carpenter and Mrs. Main that it was the intention of James B. Sponseller that so much of the funds he then had in bank, which remained at his death, should belong to, and become

the property of, Mrs. Lucy E. Sponseller. As the deposit then stood, it would not go to her at his death. To effectuate his intention, if the money was to be deposited in bank, and any dominion or control over it was to be retained by him so long as he lived, the creation of a trust was essential. An attempt, by such method, to accomplish his intentions, without the creation of a trust, would have been futile. *Taylor v. Henry, supra; Whalen v. Milholland,* 89 Md. 199, 43 A. 45; *Gorman v. Gorman,* 87 Md. 338, 39 A. 1038; *Murray v. Cannon,* 41 Md. 476; *Dougherty v. Moore,* 71 Md. 248, 18 A. 35; *In re Bauernschmidt's Estate,* 97 Md. 35, 59, 54 A. 637; *Baker v. Baker, supra.*

He did not wish to make an immediate and complete gift of the fund to her, for, had he done so, he would have been stripped of all he had. He wished to retain an interest in the fund so long as he lived, for which reason he determined to deposit the fund in a joint account with Mrs. Sponseller, and, as we have said, it was his intention, as disclosed by the evidence, that upon his death what remained of the fund on deposit should go to Mrs. Sponseller. The check made payable to him and to her authorized the opening of an account in their joint names, but in it there was no direction as to the form in which the accounts should be entered; hence it contained no provision as to the creation of a trust, but this was not essential, if the intention to create a trust was otherwise shown by the evidence, either parol or in writing. As disclosed by the evidence, the opening of a new account, in conformity with the wishes and intention of Mr. Sponseller, was by him intrusted to Dr. Roop and Mrs. Sponseller. It appears from the evidence of Dr. Roop that his participation in the duty so conferred upon him and Mrs. Sponseller amounted to very little. As he stated, he did not, himself, confer with the officials of the bank, though he was at the bank and saw Mrs. Sponseller talking with them, but he did not hear what was said, nor did he have a very distinct recollection of what was said by him and others at the time the check was signed by Mr. Sponseller. He stated that Mrs. Sponseller asked him not only to have Mr. Sponseller sign

the check, but to explain it to him. At that time, they had been to the bank and a check had been prepared by one of the officials of the bank to be signed by Mr. Sponseller. There was little or nothing to explain about the check. He said, however, that he told Mr. Sponseller what Mrs. Sponseller had told him, and, when the objection was made to his saying what Mrs. Sponseller had told him, but to tell what he told Mr. Sponseller, he responded by saying: "I asked him whether he wanted his bank account made a joint account," and he said he did, and also said that "it should have been seen to long ago"; that was about all that was said. His knowledge of the whole matter was very meagre, and he seemed to regret that he knew as much as he did. Mrs. Sponseller was not, under the rules of evidence, permitted to say what Mr. Sponseller had said to her, by way of direction as to how the deposit was to be entered upon the books of the bank, nor was she permitted to say what was said by her to the bank officials or by them to her in relation thereto, but it is in evidence that she conferred with the bank officials, both before and after obtaining the check, in relation to the transfer of the deposit and the opening of a new account, and, as a result of those conferences, the account was opened. We are therefore narrowed, in our scope of inquiry as to what were his intentions as to the creation of a trust, to the evidence of Mrs. Carpenter and Mrs. Main, who were present at the time he asked Mrs. Sponseller to call upon Dr. Roop and with him have the deposit transferred and the new account opened, and then he said that upon his death Mrs. Sponseller was to have what, at that time, remained of the fund on deposit, that at such time it was to belong to her absolutely, and this, as we have said, could not have been accomplished without the creation of a trust, so long as he retained any control and dominion over that fund. It would, therefore, we think, be rather a violent assumption to hold that a trust was not to be created by him, when by so holding his known wishes and intentions would be frustrated or defeated.

As we find no error in the court's action in dismissing the bill, the decree appealed from will be affirmed.

*Decree affirmed, with costs.*