JOHN J. GHINGHER, BANK COMMISSIONER, *v.* FOSTER H. FANSEEN.

[No. 15, January Term, 1934.]

520

*Decided April 5th, 1934.*

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Stuart S. Janney* and *Southgate L. Morison,* for the appellant.

*Herbert M. Brune, Jr.,* with whom were *Foster H. Fanseen* and *Brown & Brune* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Foster H. Fanseen, the appellee, on or about September 1st, 1932, borrowed from the Baltimore Trust Company, a Maryland banking corporation, herein called the bank, $500, and deposited with the lender collateral security for the loan. At the institution of this proceeding, the unpaid balance due on the loan was $469.47.

Prior to this proceeding he had opened an account with the savings department of the bank entitled as follows: "Foster H. Fanseen, in trust for himself and Lillian Fanseen, as joint owners, subject to the order of either, the balance at the death of either to belong to the survivor"—and had deposited to the credit of that account of his own proper funds $500, without the knowledge of Mrs. Fanseen, who prior to February 5th, 1933, knew nothing of the account or of the deposit.

At some time prior to this proceeding Fanseen offered to set off the amount of the deposit against his debt to the bank. It refused to so apply the deposit, but threatened to sell the collateral to enforce its claim, and John J. Ghingher, state banking commissioner, in whose control it was, refused to "direct and authorize" it to permit the set-off. Thereupon Fanseen filed the petition in this case, in which he prayed the court to direct the writ of mandamus to issue "(a) Directing John J. Ghingher, State Banking Commissioner, to authorize the Baltimore Trust Company to set off the savings account against the loan due by your Petitioner to the Baltimore Trust Company. (b) Directing John J. Ghingher to au-

thorize the Baltimore Trust Company to release the ten shares of the East Stroudsburg (Pennsylvania) National Bank and deliver the same to your petitioner." A demurrer filed by the defendant to that petition was overruled, and the court ordered the writ of mandamus to issue "directed to John J. Ghingher, Bank Commissioner of the State of Maryland, commanding him forthwith to order the proper officers of The Baltimore Trust Company to allow the set-off of the savings accounts in said Trust Company, standing in the name of 'Foster H. Fanseen, in trust for himself and Lillian Fanseen, as joint owners, subject to the order of either, the balance at the death of either to belong to the survivor,' against the obligation of said Foster H. Fanseen in the hands of the said The Baltimore Trust Company, and to deliver the collateral held in connection with said note or obligation to the said plaintiff, and that the clerk of this court be directed to enter a judgment in favor of the plaintiff for costs." From that order this appeal was taken.

The contention of the appellant is that the claim of the bank against Fanseen and the claim of Fanseen against the bank were in different rights and lacked mutuality, in that Fanseen's interest in the fund was that of a trustee, while the bank's claim was against him in his own right for money loaned to him personally, and that therefore his interest in the fund could not be set off against his personal debt to the bank. Appellee's contention is that, since by the terms of the deposit he could have withdrawn the entire fund deposited to his account, he also had the right to have it set off against the bank's claim against him for his personal debt to it.

The petition is inartificially drawn and omits facts which should properly have been shown. Construed most strongly against the pleader, it sufficiently alleges the facts stated, but fails to show when the trust account was opened, or when Fanseen offered to set off his interest in the trust fund against the bank's claim against him. It will therefore be assumed that the deposit was made prior to February 25th, 1933, and the demand was made after March 13th, 1933.

The question which the parties intend to present is, Did the two claims, that of the bank against Fanseen for the money he owed it, and Fanseen's claim arising out of the trust account, possess that quality of mutuality essential to give him the right to have his interest in the fund set off against his debt to the bank? But before dealing with that question we must notice a question of practice which, while not presented by the petition, is manifest on the face of the record.

It appears from the record that, when the court overruled the demurrer, it granted leave to the defendant to answer within ten days, and that, the defendant having in open court refused to answer, the court then without testimony or other proof directed the writ to issue.

The practice relating to the issuance of the writ of mandamus is special, technical and peculiar. The petition must set forth fully the grounds of the application, and must be verified by the affidavit of the petitioner. Formerly, upon the filing of the petition in a proper case, the writ issued immediately in the alternative, commanding the defendant to "do the thing ordered, or to show cause by a certain date why he should not do it." *Pennington v. Gilbert,* 148 Md. 652, 129 A. 905, 907. Under the modern practice the writ does not issue upon the filing of the petition, but the defendant is laid under a rule to show cause why it should not issue. *Id.*; Code, art. 60, sec. 2. The defendant then is required to file an answer verified by affidavit setting forth all facts relied on as a defense (Code, art. 60, sec. 3), and while not expressly so provided by the statute, he may, instead of filing an answer, demur to the petition, *West v. Musgrave,* 154 Md. 42, 139 A. 551. If an answer is filed, the petitioner may demur to it (*Good v. Board of Police Commissioners,* 137 Md. 198, 112 A. 294); and, if the demurrer is sustained, the writ may issue without proof in cases where, if every fact averred in the answer is assumed to be true, a valid legal ground is shown for the issuance of the writ (*Hooper v. New,* 85 Md. 586, 37 A. 424; *Price v. Ashburn,*

122 Md. 520, 89 A. 410). For, notwithstanding the fact that a demurrer to the answer is sustained, the answer remains in the case (*Id.*), and, in determining whether in such a case the writ is to issue, the court will consider its averments and concessions as well as those of the petition, and if, upon all the facts so alleged, admitted or conceded, it appears that the writ should issue, it will be so ordered.

The rule is not the same, however, where a demurrer to the petition is overruled, and the defendant fails or refuses to answer, for in that case the demurrer is not taken as such an admission of the facts alleged in the petition as will permit the writ to issue without proof or the equivalent of proof that the facts alleged in the petition are true; for, as stated in *Legg v. City of Annapolis,* 42 Md. 223: "The allegations of the petition are not authorized to be taken *pro confesso;* nor is the judge authorized to enter judgment as by default for want of answer, or by *nil dicit.* The case must be heard, and the mind of the judge satisfied, both as to the law and the facts, before the writ can be ordered." *Hooper v. New, supra.* In *Beasley v. Ridout,* 94 Md. 649, 52 A. 61, 62, it was held that a statement of the trial court that the "questions of fact at issue were waived or admitted" was "equivalent to full proof," but it was again stated that a demurrer to the petition does not admit the facts alleged; "that not being the effect of a demurrer in a proceeding for a prerogative writ like mandamus." See, also, *Hooper v. New, supra; West v. Musgrave, supra.*

In this case there was neither answer, proof, waiver, nor admission, but the court directed the writ to issue as though the failure of the defendant to answer relieved the petitioner of the burden of proving the facts alleged in his petition. Since defendant's failure or refusal to answer had no such effect the order must be reversed.

But while the order must be reversed for that reason, since no point was made in this court of that defect in the proceedings, and the case was argued here as though the question stated above was the only question in the case, we have

thought it proper to deal with it, so that upon a remand the case may be at an end.

In approaching that question, it may be considered that in dealing with a petition for the writ of mandamus, while the proceeding is a legal one and in a common law court, the court will invoke equitable principles to reach the "real issue or merits of the controversy." *Creager v. Hooper,* 83 Md. 502, 35 A. 159, 160; *Pope v. Withridge,* 110 Md. 475, 73 A. 281; 38 *C. J.* 545, 549, 551.

The basic principle underlying the law of set-off is that a defendant has the right to set off against the plaintiff's demand or claim any claim or demand that he may have against the plaintiff extrinsic to the transaction out of which the plaintiff's claim arises, where the cross-demands are mutual, arise out of the same right, are due and payable, and are liquidated. 57 *C. J.* 360-362; 24 *R. C. L.* 792; *Fidelity & Deposit Co. v. Poe,* 147 Md. 502, 128 A. 465; *Cohen v. Karp,* 143 Md. 211, 122 A. 524. As the doctrine was not known to the common law, in actions at law the right exists only by virtue of some statute (57 *C. J.* 360; 24 *R. C. L.* 799; Code, art. 75, sec. 16 *et seq.*); but, since it is equitable in its nature, it is generally recognized as within the general jurisdiction of courts of equity. *Id.* Under the statute in this state, in actions at law, where the cross-claim arises *ex contractu,* it may be asserted whether it be for liquidated or unliquidated damages. Code, art. 75, sec. 16.

A satisfactory definition of it is the "right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other, to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered." 24 *R. C. L.* 792.

Another and more particular definition is that given in *Cohen v. Karp,* 143 Md. 211, 122 A. 524, 525: "The defense of set-off, technically, means a cross-claim, and is confined to mutual debts between the plaintiff and defendant. The object of allowing it is to prevent circuity of action and to

enable the parties to adjust in one suit claims, which, at common law, could not be settled without two or more actions. To entitle the defendant to make such a defense, he must not only have a right to receive the amount due him from the plaintiff, but his claim must be of such a nature that he can sue for and recover it in a court of law. A joint debt cannot be set off against a separate debt, or a separate debt against a joint debt. *Milburn v. Guyther*, 8 Gill. 92; *Wilson v. Keedy*, 8 Gill. 195; *Tyrrell v. Tyrrell*, 54 Md. 167, and other cases. A separate debt, however, may be set off against a joint and several debt (*Steele v. Sellman*, 79 Md. 1, 28 A. 811; *Waterman on Set-off*, secs. 231, 232; *Harrison v. Henderson*, 4 Ga. 198); and conversely a demand that is joint and several may be set off against a separate demand. 34 *Cyc.*, p. 731, and cases in note thereto."

It may exist between an insolvent debtor and his solvent creditor, or between an insolvent creditor and his solvent debtor. 32 *C. J.* 885; 13 *R. C. L.* 655. So a depositor in an insolvent bank may set off his deposit against his debt to the bank. *Id.; Morse on Banking* (6th Ed.), secs. 338.

An essential element of the doctrine of set-off is that the cross claims or demands must be mutual and in the same right; that is to say, a claim held in a representative capacity cannot be set off against a personal debt of a representative, such as a trustee or an executor, nor can a joint claim he set off against a separate debt, or a separate claim against a joint debt. *Cohen v. Karp, supra*; 57 *C. J.* 451; *Brown v. Stewart*, 1 Md. Ch. 90; *Snow v. Conant*, 8 Vt. 301; *Brashears v. Frazier*, 102 Ky. 237, 43 S. W. 427. In *Wolf v. Beales*, 6 Serg. & R. (Pa.) 242, the statement is made that "it may be stated as a general rule, that the person having the right of action, may set off a debt due to him as a trustee," against a debt due by him in his own right," and that statement is somewhat equivocally used in 24 *R. C. L.* 872. But whatever may be the significance of those statements, they cannot be taken as affecting the rule stated above, for, as said in *Snow v. Conant, supra*, "it has never been permitted,

that a demand accruing to a person in any official or representative character should be set off against his own private debt, or *vice versa.*" And while some doubt was thrown upon the authority of that case in another respect in *Adams v. Bliss,* 16 Vt. 42, the soundness of the statement just quoted was not questioned. There may be cases where a trustee might be permitted to set off against the demand of a *cestui que trust* against him his personal claim against the demandant, but we know of no case, nor is there likely to be one, in which the right of a trustee to pay his personal debts with trust property is recognized.

The final inquiry then is whether Fanseen held the bank deposit in trust or as his own personal property. The test of his right to set off his claim against the bank against its claim against him in his own right would be whether he could in his own name sue and recover against the bank on his claim. *Cohen v. Karp, supra; Fidelity & Deposit Co. v. Poe,* 147 Md. 508, 128 A. 465; 57 C. J. 445. It is clear enough that in this case, whatever rights Fanseen and his wife may respectively have had in the deposit *inter sese,* each had an unqualified right to withdraw it as against the bank. In *Milholland v. Whalen,* 89 Md. 212, 43 A. 43, it was held that a deposit substantially the same in form as that in issue here created a valid irrevocable trust. And the court distinguished that case from *Whalen v. Milholland,* 89 Md. 210, 43 A. 45, 46, decided the same day, on the ground that the case first decided involved an incomplete gift, while the case last cited was that of a trust, although in each case the fund was deposited to the credit of two persons as "joint owners," and "payable to the order of either, or the survivor." In *Whalen v. Milholland,* the use of the words last quoted, reserving to the depositor the right to withdraw the fund on her separate order, was held to continue her dominion over it and to negative the idea of a gift. But in *Milholland v. Whalen* the same words were held not to prevent the title passing to a trustee, because in that case the deposit was declared to be "in trust" for the joint owners. Nor would the existence of

the trust at all depend upon whether Mrs. Fanseen knew of it. *Milholland v. Whalen, supra.*

*Whalen v. Milholland, supra,* was cited and approved in *Gerting v. Wells,* 103 Md. 642, 64 A. 298, 433; *Jones v. Crisp,* 109 Md. 33, 71 A. 515; *Colmary v. Fanning,* 124 Md. 565, 92 A. 1045; *Mathias v. Fowler,* 124 Md. 661, 93 A. 298; *Pearre v. Grossnickle,* 139 Md. 278, 115 A. 49; *McDevil v. Sponseller,* 160 Md. 505, 154 A. 140.

*Milholland v. Whalen, supra,* has been cited and approved in *Colmary v. Fanning, supra; Mathias v. Fowler, supra; Farmer v. Farmer,* 137 Md. 84, 111 A. 464, where the deposit was in the same form as that in issue here; *Gimbel v. Gimbel,* 148 Md. 185, 128 A. 891; *Foschia v. Foschia,* 158 Md. 71, 148 A. 121, where the deposit was in the same form as in this case; *McDevit v. Sponseller, supra; Littig v. Mt. Calvary P. E. Church,* 101 Md. 495, 61 A. 635; *Mulfinger v. Mulfinger,* 114 Md. 469, 79 A. 1089; *Reil v. Wempe,* 145 Md. 454, 125 A. 738, 740; *Sturgis v. Citizens' Nat. Bank,* 152 Md. 656, 137 A. 378. In *Reil v. Wempe, supra,* the deposit was in this form: "Margaret A. Reil, in trust for herself and George H. Wempe, subject to the order of either, and the balance at the death of either to belong to the survivor," which, as in *Milholland v. Whalen,* was held to create a trust "complete and irrevocable."

Whether one party having a joint interest in such a fund is entitled to follow it into the hands of another who has withdrawn it and reduced it to his own possession is a question upon which the authorities are not in agreement. *Ambruster v. Ambruster,* 326 Mo. 51, 31 S. W. (2nd) 28, 77 A. L. R. 799. In the opinion of a majority of the court it may not be so followed, for the reason that the term "irrevocable" applied to such trusts in earlier cases is there used in a limited sense and intended to describe only the fund on deposit so long as it remains in the custody of the depositary upon whose records the entry appears; so that, when withdrawn, as permitted by the declaration of trust, by one of the *cestuis que trust,* it is held by him in his own right free of the trust. It follows nevertheless that, at any given time, so much of the

fund here involved as remains with the depositary subject to the terms of the original deposit is held as a trust fund for "Foster H. Fanseen, in trust for himself and Lillian Fanseen, as joint owners, subject to the order of either, the balance at the death of either to belong to the survivor." It was so held at the time the bank commissioner took over the bank, and, while Fanseen could at any time prior to that day have physically withdrawn the fund, there is nothing in the petition to indicate that he could have withdrawn it after that, or that he could withdraw it now. The general rule is that the right of set-off is governed by the state of things at the moment of insolvency. *Morse on Banking,* sec. 338, note. And, while it is not definitely alleged that the bank was on March 13th, 1933, insolvent, the fact that the bank commissioner took control of it on that day may, for the purposes of this case, be treated as the equivalent of insolvency. So that the deposit stands now as it has stood, in the name of the appellee as trustee. His interest in it is dual, that of a trustee and that of a *cestui que trust,* who, if he survives the other beneficiary, will become entitled to so much of the fund as remains in the deposit at that time, and who may withdraw any part or all of said fund upon his own individual order or demand. But until withdrawn by him or by his wife, so much of the fund as remains in the deposit remains subject to the terms of the trust upon which the deposit was made, for the mere power to withdraw the fund cannot be accepted as equivalent to an actual withdrawal thereof. Since, therefore, Mr. Fanseen's interest in the fund is that of a trustee, it may not be set off against the claim of the bank against him in his personal capacity.

The order from which the appeal is taken must therefore, for the reasons stated, be reversed.

*Order reversed, with costs.*

ADKINS, J., dissents.