**TRANSIT HOMES OF AMERICA, DIVISION OF MORGAN DRIVE AWAY, INC., Plaintiff,**

v.

**HOMES OF LEGEND, INC., Defendant.**

**No. CV 01–BU–2035–M.**

United States District Court, N.D. Alabama, Middle Division.

Nov. 14, 2001.

Mark P. Williams, Norman Wood Kendrick & Turner, Birmingham, for plaintiffs.

**1194**

Gregory S. Ritchey, Richard S. Walker, Ritchey & Ritchey PA, Birmingham, for defendants.

Memorandum Opinion & Order

BUTTRAM, District Judge.

Now before the Court in the above-styled action is a motion filed October 26, 2001 by Plaintiff, Transit Homes of America, Division of Morgan Drive Away, Inc. ("Morgan"), requesting that the Court alter or amend and "reconsider" the judgment it entered dismissing the case for lack of subject matter jurisdiction. (Doc. 19). The Court concludes that Morgan's motion is due to be **DENIED**.

### I.

Morgan is a motor carrier that transports property interstate. In July 1997, Morgan entered into a contract with Defendant Homes of Legend, Inc. ("HOL"), who makes manufactured homes. Under this contract, Morgan agreed to transport HOL's manufactured homes from points of manufacture at or near Boaz, Alabama to points in the continental United States. Morgan brings this action against HOL seeking to recover $46,224.23 representing unpaid freight charges.

On October 12, 2001, this Court entered a memorandum opinion and order dismissing the action for lack of subject matter jurisdiction. (Doc. 18). The Court initially noted that it lacked diversity jurisdiction under 28 U.S.C. § 1332 because the requisite amount in controversy was not satisfied. The Court acknowledged that 28 U.S.C. § 1337(a) confers original jurisdiction upon the district courts over "any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." However, the Court ultimately found that Morgan's claim does not "arise under" any such Act, nor any other federal law for purposes of 28 U.S.C. § 1331. First, the Court determined that, although issues re-

lating to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, might be litigated in the case, it could not be said that Morgan's claim, as a carrier against a shipper for unpaid freight charges, "arises under" that statute, which by its terms outlines only a shipper's remedy *against* a carrier under a receipt or bill of lading for loss or damage to the property transported. Second, responding to Morgan's assertion that subject matter jurisdiction exists by virtue of a federal right and obligation to collect unpaid freight charges, the Court reasoned that following the substantial deregulation of the trucking industry in the Mid 1990's, no such right or duty is vested in a motor carrier where, as here, there is no applicable filed tariff. Rather, the Court explained, any right that Morgan had to collect charges owed to it springs solely from its contract with HOL. Finally, Morgan asserted that such contract was expressly authorized under 49 U.S.C. § 14101(b)(1) and that subsection (b)(2) of that section conferred original jurisdiction to hear a breach of such a contract. The Court acknowledged that § 14101(b)(1) allowed the parties to contract for transportation, but the Court disagreed that § 14101(b)(2) was an affirmative grant of federal jurisdiction for purposes of 28 U.S.C. § 1337. And because the Court determined that subject matter jurisdiction was lacking, it dismissed the action and instructed Morgan that it might file its action in a state court.

### II.

Morgan has filed a timely Fed. R.Civ.P. 59(e) motion to alter or amend and "reconsider" the judgment dismissing the case without prejudice. The decision whether to alter or amend a judgment pursuant to Rule 59(e) is "committed to the sound discretion of the district judge." *American Home Assurance Co. v. Glenn*

*Estess & Assocs.*, 763 F.2d 1237, 1238–39 (11th Cir.1985). While the Court declines to alter or amend its prior ruling, the Court recognizes that Morgan's motion contains a number of points that deserve to be addressed.

### III.

*A. Jurisdiction under 49 U.S.C. § 14101(b)(2)*

Morgan appears to acknowledge that its claim to recover unpaid freight charges does not arise under the Carmack Amendment. Morgan still maintains, however, that its contract with HOL is authorized under 49 U.S.C. § 14101(b)(1), and that the plain language of § 14101(b)(2) confers jurisdiction upon this Court to hear a breach of contract claim. Again, the full text of § 14101 is as follows:

> *(1) In general.*—A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies. The parties may not waive the provisions governing registration, insurance, or safety fitness.

> *(2) Remedy for breach of contract.*— The exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree.

49 U.S.C. § 14101.

 Section 14101(a) does authorize the contract between Morgan and HOL. But this authorization alone evidences little if any Congressional intent to federalize every breach-of-contract claim involving a motor carrier subject to federal regulation. When a carrier brings a claim to recover amounts owed under a federally required filed tariff, there is no question that original jurisdiction exists under 28 U.S.C. § 1337. *See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983). Of course, as the Court has previously explained, legislation passed in the mid–1990's substantially deregulated the trucking industry. *See Whitaker v. Frito–Lay, Inc.*, 88 F.3d 952 (11th Cir.1996). Most motor carrier transportation is still subject to the jurisdiction of the Surface Transportation Board ("Board"), *see* 49 U.S.C. § 13501–08, and those motor carriers still have federal registration requirements, *see* 49 U.S.C. § 13901–02. Motor carriers subject to the Board's jurisdiction also retain some common carrier-like obligations, such as providing transportation on "reasonable request," and providing "safe and adequate service, equipment, and facilities." 49 U.S.C. § 14101(a). But now, only very limited types of motor carrier transportation, undisputedly not at issue in this case, are still subject to filed tariff and "reasonable" rate requirements and to prohibitions against discrimination amongst shippers. *See* 49 U.S.C. § 13701–02. Therefore, the great majority of transportation of property by motor carrier in this country must, of necessity, occur pursuant to the terms of private contracts of one form or another, be they receipts, bills of lading, or otherwise, between individual carriers and shippers. Accordingly,

the primary importance of § 14101(b)(1) is not simply that it permits contracting by carriers who are not transporting household goods. Rather, the importance of the subsection lies in its specific allowance for such carriers and parties with whom they deal expressly to contract around certain federal obligations and remedies, in particular the Carmack Amendment, established as default rules by Congress. *See* Stephen G. Wood, *Multimodal Transportation: An American Perspective on Carrier Liability and Bill of Lading Issues*, 46 Am. J. Comp. L. 403, 411 (1998); *cf. Dow Chemical Co. v. Union Pacific Corp.*, 8 F.Supp.2d 940, 941 (S.D.Tex.1998) (remarking that similar provisions in 49 U.S.C. § 10709 applicable to rail carrier contracts was "clear[ly]" enacted for the "purpose of . . . allow[ing] parties the ability to alter federal mandates, or to avoid federal control and oversight over rail contracts".)

▮▮▮▮ Further, contrary to Morgan's suggestion, the plain language of 49 U.S.C. § 14101(b)(2) does not unambiguously grant a party to a contract authorized under subsection (b)(1) a virtually unfettered choice of deciding whether to bring a claim in either a state or federal court. First, subsection (b)(2) does not expressly create either a federal cause of action or federal subject matter jurisdiction. It does not say, for example, that "[a] civil action under this section may be brought in a United States district court or in a State court," as is the case with the cause of action expressly delineated in the Carmack Amendment. 49 U.S.C. § 14706(d)(3). Rather, § 14101(b)(2) states that the remedy for breach of a contract authorized under subsection (b)(1), a court action, is "exclusive." The use of such an adjective only makes sense if the primary focus of subsection (b)(2) is to stake out clearly that any remedy for breach of contract must be judicial, rather than administrative, in nature.[1] This is logical given that the Interstate Commerce Commission, the precursor to the Board, formerly had primary jurisdiction over a variety of matters relating to the relationships between carriers and shippers. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304–05, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Taylor County Sand Co. v. Seaboard Coast Line R. Co.*, 446 F.2d 853, 854 (5th Cir.1971). *See also* 49 U.S.C. § 11101(d) (1994) (repealed) (providing that the ICC had primary jurisdiction to resolve disputes with respect to whether a motor carrier was acting in its capacity as a common carrier or contract carrier when it provided service to a particular shipper). Moreover, the Board and the Secretary of Transportation ("Secretary") still retain jurisdiction over most motor carrier transportation, 49 U.S.C. § 13501–08, and persons are expressly authorized to file with the Board or the Secretary a complaint alleging that a carrier has violated the provisions of Part B of Subtitle IV of Title

---

1. Morgan has indicated that it believes the Court has based its decision that it lacks subject matter jurisdiction over this action, at least in part, upon the doctrine of primary jurisdiction. *See* Plaintiff's Brief in Support of Its Motion to Alter or Amend Judgment (Doc. 20) (hereinafter "Morgan's Brief") at 4 n. 2. That is not the case at all. The Court is not suggesting that the Surface Transportation Board has any role whatsoever in resolving Morgan's contract claim against HOL. There can be no doubt that a court, and not an administrative agency, is the proper forum under 49 U.S.C. § 14101(b)(2). *See Miller v. WD–40 Co.*, 29 F.Supp.2d 1040, 1043–44 (D.Minn.1998). The question is, rather, which court, state or federal? The Court simply answers that in this case it must be the former because there is no diversity jurisdiction and the Court concludes that Morgan's contract claim for unpaid freight charges does not "arise under" federal law for purposes of 28 U.S.C. § 1331 or § 1337.

49, the statutes applicable to motor carrier transportation. 49 U.S.C. § 14701(b).

■ In addition, Section 14101(b)(2) provides that the action it contemplates shall be brought in an *"appropriate* State court or United States district court . . . ." 49 U.S.C. § 14101(b)(2) (emphasis added). The inclusion of the word "appropriate," which means "specially suitable: fit, proper," *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 683, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (quoting Webster's Third International Dictionary), necessarily implies a limitation upon the courts in which an action for breach may be brought. Clearly, the statute can be read reasonably to mean that a claim for breach of contract, as traditional a common law remedy as can be, arises under state law and thus a federal court is not "appropriate" unless it possesses some *independent* and adequate ground of original jurisdiction. Indeed, it would seem that if Congress intended for § 14101(b)(2) itself to confer federal jurisdiction, it would have not used such a word of limitation and would have said instead merely that an action might be brought in "a" state court or in "a" federal district court, as Congress did in the Carmack Amendment. *See* 49 U.S.C. § 14706(d)(3).

■ The interpretation of § 14101(b)(2) urged by Morgan has far-reaching implications. To accept it would mean that every claim for unpaid freight charges by a motor carrier subject to the jurisdiction of the Board, tariff or no, gives rise to a federal claim over which there exists original jurisdiction. However, Federal courts are courts of limited jurisdiction, permitted to hear only cases that the Constitution or Congress has authorized. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citing cases). Moreover, jurisdictional statutes must be read in light of "the axiom that clear statutory mandate must exist to

found jurisdiction." *Carroll v. United States,* 354 U.S. 394, 399, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). Thus, "[s]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1067 (5th Cir.1984) (citations omitted). Here, § 14101(b)(2) is at best ambiguous with regard to whether it creates a federal cause of action over which original jurisdiction exists or whether it instead merely precludes an administrative remedy and allows a claimant to bring an action in federal court where it would otherwise possess subject matter jurisdiction. Thus, the Court is hesitant to infer a federal cause of action or original jurisdiction.

Moreover, as the Court noted in its order of October 12, nearly identical language to 49 U.S.C. § 14101(b)(2) was enacted as part of the Staggers Act of 1980, which was applicable to rail carriers. *See* 49 U.S.C. § 10713(i)(2) (1994) (repealed). Just like 49 U.S.C. § 14101(b)(1), § 10713 authorized "rail carriers providing transportation subject to the jurisdiction of the Interstate Commerce Commission . . . [to] enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions." 49 U.S.C. § 10713(a) (1994) (repealed). And like § 14101(b)(2), it provided, "The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree." 49 U.S.C. § 10713(i)(2) (1994) (repealed). When this statute was recodified following the passage of the Interstate Commerce Commission Termination Act of 1995, the material language in subsections (a) and (i)(2) was retained, but it was made express that the statute did *not* independently confer subject matter jurisdiction for purposes of 28 U.S.C. § 1331 or 1337.

49 U.S.C. § 10709(c)(2). From this, the Court concluded that, the post-ICCTA structures of the regulatory schemes applicable to contracts entered into by rail and motor carriers with their shippers, while perhaps not identical in all respects, were similar enough that it was unlikely that Congress intended for the "appropriate State court or United States district court" language in § 14101(b)(2) to affirmatively and independently confer federal jurisdiction where motor carriers are involved given that Congress unmistakably intended that the same language in § 10709(c)(2) is not a grant of jurisdiction where rail carriers are involved.

■ Morgan argues, however, that the Court has erred by using 49 U.S.C. § 10709(c)(2) as an analogue to § 14101(b)(2). First, Morgan emphasizes that, unlike the former, there is no provision in the latter expressly disclaiming an intent to confer original jurisdiction upon the federal district courts. This is, of course, true. And it does, as the Court previously recognized, lend some support to Morgan's claim that Congress intended for §§ 10709 and 14101 to be treated differently with regard to federal jurisdiction, for Congress certainly could have included the jurisdictional disclaimer in § 14101(b)(2). " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972)).

But an examination of the legislative history of the ICCTA shows that the provisions that would become 49 U.S.C. §§ 10709(c)(2) and 14101(b)(2) originally *both* lacked the additional disclaimer about jurisdiction under 28 U.S.C. § 1331 and

1337. *See* H.R. REP. 104–311, *10, 1996 U.S.C.C.A.N. 793. The jurisdiction disclaimer added to what would become 49 U.S.C. § 10709(c)(2) was suggested by Congressman Shuster in a laundry list of amendments and adopted without any specific discussion. *See* 141 Cong. Rec. H12248–02, *H12262. Given the very substantial size and scope of the bill abolishing the ICC, the Court concludes that the summary addition of jurisdictional disclaimer language only to § 10709 cannot alone overcome the doctrine that federal jurisdiction is not to be lightly inferred and the likelihood that Congress intended for both that section and § 14101 to be interpreted similarly with respect to the existence of federal jurisdiction over claims alleging breach in rail and motor carrier contracts. The similar overall statutory language and schemes allow both types of carriers to contract around federal rights and remedies and provide that the exclusive remedy for a breach is an action in an "appropriate" court. There is simply no apparent policy justification for inferring a federal cause of action and federal jurisdiction to exist for motor carrier contracts alone. This is particularly so given that the unmistakable theme of the ITTCA is to roll back federal regulation of the interstate trucking industry generally, and that § 14101(b) in particular allows parties to *avoid* federal regulatory default rules.

Morgan urges, however, that the regulatory framework applicable to rail carriers really *is* materially different from that applicable to motor carriers and justifies treating the issue of federal court jurisdiction differently under §§ 14101 and 10709. Morgan claims that the jurisdictional disclaimer in § 10709(c)(2) is required in order to avoid confusion with regard to matters that are within the jurisdiction of the Board, and thus are not appropriately the subject of a court action. However, as the Court has explained above, the Board or

the Secretary still retains jurisdiction over most motor carriers, including Morgan, for some matters, and they are still authorized to entertain administrative complaints alleging that a motor carrier has violated provisions of the interstate transportation statutes in Part B of Title 49. *See* 49 U.S.C. §§ 13501, 14701(b) Thus, the same considerations regarding the interplay between the jurisdiction of the Board and the Secretary on the one hand and the courts on the other are applicable to contracts executed by both motor carriers as well as by rail carriers. Based on the foregoing, the Court adheres to its position that jurisdiction over Morgan's claim cannot be founded upon 49 U.S.C. § 14101(b)(2).

### B. Jurisdiction under 49 U.S.C. § 13707

Morgan also contends that this Court has original jurisdiction under 28 U.S.C. § 1337 based upon 49 U.S.C. § 13707. That statute provides in pertinent part as follows:

> **(a) Transfer of possession upon payment.**-Except as provided in subsection (b), a carrier providing transportation or service subject to jurisdiction under this part shall give up possession at the destination of the property transported by it only when payment for the transportation or service is made.
>
> **(b) Exceptions.—**
>
> **(1) Regulations.**-Under regulations of the Secretary governing the payment for transportation ... and prevention of discrimination, those carriers may give up possession at destination of property transported by them before payment for the transportation ....

49 U.S.C. § 13707. Morgan argues that it remains entitled under this section to collect its payment for transportation rendered to HOL, thus creating subject matter jurisdiction over a claim seeking such payment.

The Court can find no case ever having suggested that 49 U.S.C. § 13707 or its predecessor, 49 U.S.C. § 10743 (1995) (repealed), either creates a federal cause of action or confers original jurisdiction for purposes of 28 U.S.C. § 1331 or § 1337. Rather, it is commonly understood that those provisions merely prevented certain carriers from extending credit except upon conditions prescribed by regulation. *See I.C.C. v. Transcon Lines,* 513 U.S. 138, 141, 115 S.Ct. 689, 130 L.Ed.2d 562 (1995); *Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 344–46, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). In addition, the Court notes that the reason for the general requirement of payment for delivery, enacted following World War I, was to protect the working capital of carriers and avoid discrimination among credit recipients. *Southern Pac.,* 456 U.S. at 345–46, 102 S.Ct. 1815. However, most motor carriers, including Morgan, are no longer bound by prohibitions against discriminating between shippers. Thus, it should be unsurprising that, pursuant to regulation, the rules and restrictions regarding extending credit to shippers do not apply to contract carriage operations, such as conducted by Morgan. 49 C.F.R. § 377.201(b)(1). The Court concludes that 49 U.S.C. § 13707 does not vest it with original jurisdiction.

### IV.

Based on the foregoing, Morgan's motion (Doc. 19) is **DENIED**. The Court adheres to its position that it does not possess original jurisdiction over Morgan's claim for unpaid freight charges under either 28 U.S.C. §§ 1331, 1332, or 1337 or 49 U.S.C. §§ 14101(b)(2) or 13707. Because the Court lacks subject matter jurisdiction, this action is again **DISMISSED**, without

prejudice to Morgan to file its claim in an appropriate state court.