MASTERCRAFT INTERIORS,
LTD. Plaintiff,

v.

ABF FREIGHT SYSTEMS,
INC. Defendant.

No. CIV.A. RDB–03–1580.

United States District Court,
D. Maryland,
Southern Division.

Dec. 23, 2004.

Charles R. Claxton, Garson & Associates, LLC, Bethesda, MD, for Plaintiff.

Alexia Kent Bourgerie, Stein Sperling Bennett De Jong Driscoll and Greenfeig PC, Rockville, MD, for Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

Pending is the Motion for Summary Judgment of the Defendant ABF Freight Systems, Inc. ("ABF") on the Complaint filed by the Plaintiff Mastercraft Interiors, Ltd. ("Mastercraft"), and the Motion for Summary Judgment of ABF on its counterclaim against Mastercraft. Mastercraft sued ABF in a four-count Complaint, alleging Breach of Contract (Count I), misrepresentation (Count II), negligent misrepresentation (Count III), and unjust enrichment/restitution (Count IV) in the overcharging of shipping costs. On September 17, 2003, this Court held that the Interstate Commerce Commission Termination Act ("ICCTA") preempted Mastercraft's tort claims in Counts II, III, and IV and, therefore, dismissed said Counts. *See Mastercraft Interiors, Ltd. v. ABF Freight Systems, Inc.*, 284 F.Supp.2d 284 (D.Md.2003). The Court denied ABF's motion to dismiss Mastercraft's breach of contract claim in Count I. Discovery having been completed, ABF now moves for summary judgment on the remaining breach of contract claim as well as on its counterclaim. The issues have been fully briefed by the parties, and no oral argument is necessary. *See* Local Rule 105.6 (D.Md.2004). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Mastercraft is a Maryland corporation with its principal place of business in Maryland and ABF is a Delaware corporation with its principal place of business in Arkansas. In addition, Mastercraft alleges that is suffered no less than $180,000 of damages from ABF's alleged breach of contract. (Compl. ¶ 14.) For the reasons stated below, ABF's Motion for Summary Judgment on Count I of the Plaintiff's Complaint is DENIED, and ABF's Motion for Summary Judgment on its counterclaim is DENIED.

## BACKGROUND

Mastercraft is a company that sells home and business furnishings and ABF is an interstate motor carrier with a license from the Federal Motor Carrier Safety Administration to transport general freight. For many years, Mastercraft regularly purchased furniture from Brown Jordan, a furniture manufacturer in El Monte, California. Mastercraft paid Brown Jordan for the shipping directly, but ABF actually performed the shipping services. Brown Jordan's shipping charge was based on a percentage of the purchase price of the furniture purchased by Mastercraft. ABF prices its shipping differently and its pricing model is largely based on a commodity classification table provided by the National Motor Freight Classification in Washington, DC. (Michael Doyle Depo. at 25–29.)

In the summer of 2001, Brown Jordan informed Mastercraft that it was going to raise its shipping rates, which would become effective in the fall of 2001. The price increase would raise the shipping rate from 6% of the purchase price of the furniture to 10% of the purchase price. In response to this price increase, Mastercraft explored other shipping options, including shipping directly through ABF.

The facts relating to interactions between Mastercraft's warehouse manager, Michael Price, and Michael Doyle, the ABF salesman in the Company's Baltimore office assigned to Mastercraft, are in dispute. In the summer of 2001, Price apparently called ABF and was put in touch with Doyle. (Michael Price Depo. at 37–38.) Price recalls that he and Doyle met at Mastercraft on August 7, 2001. (Price Depo. at 39–40.) Price recalls asking Doyle whether Mastercraft could save money by shipping directly with ABF instead of paying Brown Jordan's new higher rates, which Mastercraft estimated would cost it about $3,000 per truckload shipment. (Price Depo. at 45–46.) Doyle does not recall having any conversation with Price about the specific price ABF would charge Mastercraft, nor about the average charges Mastercraft was incurring or expected to incur based on Brown Jordan's shipping price. (Doyle Depo. at 86.) Doyle does not recall Price or anyone at Mastercraft asking about ABF's shipping prices in the summer or fall of 2001. (Doyle Depo. at 102.) Doyle does not recall with specificity his interaction with Price in the summer of 2001. However, Doyle acknowledges that he was trying to obtain more business from Mastercraft during the summer and fall of 2001, and that he spoke with Price. (Doyle Depo. at 78.) Doyle recalls that Price was interested in learning what Mastercraft's true shipping costs were because he was unable to determine this based on Brown Jordan's percentage of goods purchased shipping charge formula. (Doyle Depo. 79–81.) On August 22, 2001, Price recalls meeting with Doyle at Mastercraft. Doyle does not specifically remember this meeting, but claims that he never offered Mastercraft any specific shipping price, in part, because he would be unable to determine a price estimate based on the information he knew. (Doyle Depo. at 94, 100, 208.) Mastercraft claims that Doyle told Price that if Mastercraft went directly with ABF, the shipping cost would be less than if it continued to pay for shipping through Brown Jordan. (Price Depo. at 58–64, 103–105.) Doyle states that he never made any promises about what shipping would cost with ABF and made no representation that, by shipping with ABF directly instead of through Brown Jordan, Mastercraft would save money. (Doyle Depo. at 214.) Mastercraft claims that Doyle and Price agreed that Mastercraft would start shipping directly with ABF and Mastercraft informed Brown Jordan that it would no longer be

making shipping arrangements through Brown Jordan. (Pl.'s Ex. 7, Ans. 1.)

After Mastercraft began shipping directly through ABF, it checked the bills of lading to confirm that all of the furniture that was supposed to have been shipped had indeed arrived. However, Mastercraft apparently did not verify that the shipping rates on the bills of lading reflected the rate that Mastercraft believed should be charged by ABF. (Dean Nelson Depo. at 79–80.) As a result of this practice, Mastercraft did not realize that it was not receiving the rate it believed ABF had promised until the fall of 2002 when it reviewed the Company's expenses and noticed unexpectedly high shipping costs. (*See id.*) Mastercraft orally notified ABF in September or October 2002 that ABF's shipping charges related to Brown Jordan were too high and asked for a refund to bring the charges in line with the rate it believed ABF has promised Mastercraft. (Price Depo. at 79–81, Doyle Depo. at 159–163.) Mastercraft did not provide ABF a written notice of its objections to ABF's freight charges.

While ABF acted as a carrier for Mastercraft, it provided Mastercraft with bills of lading describing the point of origin, the consignor, the date(s) of pick-up, the freight transported, the applicable rate, and the amount due. (Attachments to Def.'s Ex. A.) ABF was also providing shipping services for Mastercraft other than those originating from Brown Jordan in California. In October 2002, Mastercraft stopped paying ABF for all of its services, regardless of the place of pick-up, and ABF claims that these unpaid shipping charges, including those originating from Brown Jordan, amount to $75,249.95. (*See id.*) ABF also claims that it is entitled to certain penalties bringing the total amount owed by Mastercraft to $97,824.94.

Mastercraft commenced this suit on May 30, 2003. On June 26, 2003, Defendant ABF filed a Motion to Dismiss all counts of the Complaint and, on September 17, 2003, this Court granted ABF's motion, based on the federal preemption provision in the ICCTA, for all Counts in Plaintiff's Complaint, except Count I, claiming breach of contract. On September 26, 2003, ABF filed a counterclaim seeking payment for unpaid freight invoices. ABF now moves for summary judgment on two main grounds: 1) that no oral contract can exist between the parties because any contract is required to be in writing pursuant to the Interstate Commerce Commission Termination Act, Pub.L. No. 104–88, 109 Stat. 803 (1995) (codified in scattered sections of 49 U.S.C.), specifically § 14101(b)(1) of title 49 in the U.S.C., and 2) that Mastercraft is precluded from bringing this suit because it did not inform ABF within 180 days of its disagreement with ABF's freight charges in compliance with the notice provisions required in 49 U.S.C. § 13710(a)(3)(B). ABF also moves for summary judgment on its counterclaim against Mastercraft in the amount of $97,824.94 in tariff fees and penalties for the shipments transported by ABF for Mastercraft.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that only

"facts that might affect the outcome of the suit under the governing law" are *material*. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249, 106 S.Ct. 2505. In that context, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

However, "[w]hen the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e)). Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment. *Id.* at 252, 106 S.Ct. 2505. Furthermore, District Courts have an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves - Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)(citing *Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548).

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the non-moving party at trial. *Rachel–Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 742 (citing *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505). Moreover, any inferences drawn from disputed evidence must be accorded to the non-moving party. *See Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Pulliam Investment Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

## ANALYSIS

ABF argues that it is entitled to summary judgment on the sole remaining Count of Mastercraft's Complaint, as there was no written contract between Mastercraft and ABF as required under federal law pursuant to the ICCTA, 49 U.S.C. § 14101(b)(1). Mastercraft disagrees with ABF's interpretation of § 14101(b)(1) and contends that there was an oral contract between the parties, which obligated ABF to charge freight rates below $3,000 per truckload. As this Court has previously noted in this case, "there is a dearth of case law interpreting the preemptive provision of the ICCTA." *Mastercraft*, 284 F.Supp.2d at 286. In this case, this Court has previously held that the tort claims of misrepresentation, negligent misrepresentation, and unjust enrichment, reflected in Counts II, II, and IV of Mastercraft's Complaint, are preempted by the ICCTA. The breach of contract claim, however, relates to enforcement of the "bargain of the parties." *Id.* at 288. As discussed in

more detail below, the interpretation of the "bargain of the parties" is guided by Maryland contract law.

ABF also argues that Mastercraft is precluded from bringing this suit because it did not inform ABF within 180 days of its disagreement with ABF's freight charges in compliance with the notice provisions required in 49 U.S.C. § 13710(a)(3)(B). In addition, ABF claims that it is entitled to summary judgment on its counterclaim and that Mastercraft is required to pay ABF $97,824.94 in tariff fees and penalties.

### A. Applicability of 49 U.S.C. § 14101(b)(1)

ABF argues that, as a matter of law, no contract was formed between ABF and Mastercraft because the ICCTA requires contracts between carriers, like ABF, and shippers, like Mastercraft, to be in writing. ABF claims that this writing requirement is located in 49 U.S.C. § 14101(b)(1), which states:

A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the

ground that it violates the waived rights and remedies. The parties may not waive the provisions governing registration, insurance, or safety fitness.

Mastercraft argues that this provision does not require a written contract. Mastercraft contends that § 14101(b)(1) only requires a writing when carriers and shippers agree to waive certain statutory obligations.

The parties have not provided, nor has the Court been able to locate a case discussing this precise issue. However, in *Transit Homes of America, Division of Morgan Drive Away, Inc. v. Homes of Legend, Inc.*, 173 F.Supp.2d 1192 (N.D.Ala.2001) the court considered a carrier's motion for reconsideration of the court's decision to dismiss the carrier's complaint against a shipper for unpaid freight charges. The court dismissed the carrier's claim for lack of jurisdiction.[1] In its motion for reconsideration, the carrier asserted that the contract between the carrier and the shipper was expressly authorized under § 14101(b)(1) and that Congress provided the court with original jurisdiction under § 14101(b)(2). Section 14101(b)(2) states: *"Remedy for breach of contract.*—The exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."

While the court agreed that § 14101 authorized the contract between the carrier and the shipper, it stated that " . . . this authorization alone evidences little if any

---

1. Unlike the case *sub judice*, the court determined that there was no basis for diversity jurisdiction in *Transit Homes of America, Div. of Morgan Drive Away, Inc. v. Homes of Legend, Inc.*, 173 F.Supp.2d 1185 (N.D.Ala.2001) (holding that the court lacks subject matter jurisdiction and dismissing the plaintiff's

complaint); *see also Transit Homes of America, Division of Morgan Drive Away, Inc. v. Homes of Legend, Inc.*, 173 F.Supp.2d 1192 (N.D.Ala.2001) (denying plaintiff's motion for reconsideration of the court's dismissal of plaintiff's complaint).

Congressional intent to federalize every breach-of-contract claim involving a motor carrier subject to federal regulation." *Transit Homes of America*, 173 F.Supp.2d at 1195. After conducting a full analysis of the relevant sections of § 14101, the court concluded that "[c]learly, the statute can be read reasonably to mean that a claim for breach of contract, as traditional a common law remedy as can be, arises under state law and thus a federal court is not 'appropriate' unless it possesses some *independent* and adequate ground of original jurisdiction." *Transit Homes of America*, 173 F.Supp.2d at 1197. In addition, the court in *Transit Homes of America* noted that the importance of § 14101(b)(1) is that it enables carriers and shippers to contract around certain federal obligations and remedies that Congress established as a set of default rules. *See id.* at 1196. Based on its analysis, the court denied the carrier's motion for reconsideration and the carrier's claims were dismissed for lack of jurisdiction.

■ The analysis and holding in *Transit Homes of America* clearly support the principle that contracts between carriers and shippers under § 14101(b)(1) are governed by state law. Therefore, § 14101(b)(1) does not create a federal mandate that all contracts between carriers and shippers be in writing, as any statute of frauds requirement would be governed by the applicable state law. This result is further supported by the plain language of the statute, which states that "[a] carrier providing transportation ... may enter into a contract with a shipper ... to provide specified services under specified rates and conditions ...." If Congress had intended to require that such a contract be in writing, it would have stated that "a carrier ... may enter into a [*written*] contract with a shipper." However, the word "written" was not included in the provision authorizing a carrier's right to contract. Section 14101(b)(1) does specify that a writing is necessary to evidence that a carrier and shipper agreed to waive the federal obligations and remedies that Congress established as default rules. This limited writing requirement only applies, however, to the waiver of federal obligations and remedies and not to the overall contract between the parties. Therefore, the Court finds that § 14101(b)(1) does not create a federal mandate that a contract between a carrier and a shipper be in writing. Instead, any contract between the parties in this matter is subject to requirements established by the applicable state law.

## B. The Formation and Enforceability of the Alleged Contract Under State Law

■ ABF contends in its Reply brief that Mastercraft has not presented evidence sufficient to show that a contract was formed because there was no price decided, and therefore, there could not have been a meeting of the minds between the parties on this essential contract term. (Reply at 1.) Mastercraft claims that the "less than $3,000 amount," which was tied to beating the price Brown Jordan would charge it for shipping, is an extrinsic measure of price that is sufficient to form an enforceable contract. (Mastercraft Resp. at 7.) Although neither party states what state law applies to the possible formation of the contract in this case, based on the principle of *lex loci contractus*, the Court will look to the law of the place where the contract was made. *See Rouse Co. v. Federal Ins. Co.*, 991 F.Supp. 460, 462 (D.Md. 1998) (citing *American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 659 A.2d 1295 (1995)). "Under the *lex loci* principle, a contract is "made" where the last act necessary for its formation is performed." *Id.* (citing *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 215

A.2d 467 (1965)). In this case, Mastercraft argues that in August 2001 Doyle, who worked in ABF's Baltimore office, and Price met at Mastercraft in Beltsville, Maryland, and during the meeting an oral contract was made. Therefore, the Court will apply Maryland contract law to determine whether an enforceable contract was formed between the parties.

▮▮ Generally, a contract is not automatically unenforceable because parties do not explicitly state a definitive numeric price. The Maryland Court of Special Appeals has recognized that certain extrinsic measures, such as "fair market value," "reasonable value" or "current market value," of the services or the property involved, *may* provide enough specificity for a court to determine the price and create an enforceable obligation. *See Hanna v. Bauguess,* 49 Md.App. 87, 430 A.2d 104, 108 (1981). However, the Court need not determine this issue at this time, on a motion for summary judgment, when essentially all of the material facts surrounding the formation of the alleged contract are in dispute. Most notably, Doyle denies ever promising that ABF could ship the furniture from Brown Jordan to Mastercraft for less than $3,000, while Price believes that an agreement was reached to ship goods for under this amount. The factual disputes concerning whether the parties intended to create a contract, and the possible terms of the contract, especially the interpretation of the price term, are issues for the trier of fact. *See Edell & Associates, P.C. v. Law Offices of Peter G. Angelos,* 264 F.3d 424, 443 (4th Cir. 2001).

C. *180 Day Notice Provision Under 49 U.S.C. § 13710(a)(3)(B)*

ABF claims that 49 U.S.C. § 13710(a)(3)(B) and certain Surface Transportation Board decisions discussing

this section, prohibit Mastercraft from bringing suit because it did not complain in writing to ABF within 180 days that the rates on the bills of lading were incorrect. Section 13710(a)(3)(B) states:

> If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the [Surface Transportation] Board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

Mastercraft contends, not only that ABF's interpretation of this section is incorrect, but also that read in conjunction with 49 U.S.C. § 14101(b)(2), it is not applicable to a breach of contract claim brought in federal court. Mastercraft contends that § 13710(a)(3)(B) is only applicable when a shipper decides to seek a determination by the Surface Transportation Board. Indeed, it is clear from the use of phrases in this provision, such as "if a shipper" and "may request" that a determination by the Surface Transportation Board is not required prior to bringing suit in the appropriate state or federal court.

▮ ABF essentially contends that the 180 day period to contest charges is a prerequisite to the filing of any action in court. However, Mastercraft aptly notes § 14101(b)(2), specifically entitled "[r]emedy for breach of contract," which states, as noted above, that "[t]he exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree." ABF argues that the 180 day time period outlined in a separate section of the code, § 13710(a)(3)(B), should be imposed on any such court action. While ABF has cited

two declaratory orders from the Surface Transportation Board, it has cited no case law authority in support of this proposition. Quite simply, this 180 day regulatory requirement cannot be imposed upon actions to enforce a contract under Maryland law. As discussed above, in *Transit Homes of America, Division of Morgan Drive Away, Inc. v. Homes of Legend, Inc.,* 173 F.Supp.2d 1192 (N.D.Ala.2001) the court determined that a breach of contract claim between a shipper and a carrier arose under state law. *See Transit Homes of America,* 173 F.Supp.2d at 1197. The Court does not find that § 13710(a)(3)(B) imposes the 180 day requirement that ABF suggests on this breach of contract claim, governed by Maryland law.

D. *ABF's Counterclaim for $97,824.94 in Tariff Fees and Penalties*

■ Basically, ABF's counterclaim encompasses two claims for relief. First, that ABF is entitled to payment for shipping services from Brown Jordan to Mastercraft. Second, that ABF is entitled to payment for shipping services from other points of origin, or from other consignors, to Mastercraft. Mastercraft stopped paying for these shipping services, in addition to services for goods originating from Brown Jordan, in approximately October 2002. As discussed above, for the first part of ABF's counterclaim, there are genuine issues of material fact related to whether the parties entered into a contract related to the shipments from Brown Jordan and, if a contract was formed, what price the parties agreed upon for the shipments from Brown Jordan to Mastercraft. Therefore, the fact-finder must determine these issues related to the Brown Jordan shipments, which are not appropriate for the Court to determine on summary judgment.

The second part of ABF's counterclaim relates to Mastercraft's non-payment for services provided from other points of origin. Mastercraft, citing *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75, 78 (1934), argues that it is entitled to withhold payment for all of ABF's services based on the common law principle of set-off. (Pl's Resp. at 15.) As this Court applies Maryland contract law to determine the respective rights of the parties in this litigation, the Court must examine the principle of set-off under Maryland law. In the *Ghingher* case, the Court of Appeals of Maryland recognized that the law of set-off "was not known to the common law" and that the right only existed "by virtue of some statute." 172 A. at 78. However, the Court further recognized the principle as being "within the general jurisdiction of courts of equity." *Id.* In a later opinion the Court noted in *Holloway v. Chrysler Credit Corp.,* 251 Md. 65, 246 A.2d 265 (1968) that a "claim arising out of an independent transaction (set-off) must be pleaded as a counterclaim, but one arising out of the same transaction (recoupment) may not be." *Id.* at 266. This language was subsequently quoted by the Court in *Smith v. Johns Eastern Co.,* 269 Md. 267, 305 A.2d 460, 463 (1972). Essentially, a review of Maryland case law suggests that the first part of ABF's counterclaim is viewed as a recoupment, while the second part must be pleaded as a counterclaim.

Maryland contract law is appropriately incorporated in the procedures followed in this case with respect to the assertion of a counterclaim. Indeed, it has been noted that at common law a set-off "referred to a claim by defendant that was unrelated to plaintiff's claim," for which a defendant could assert an affirmative claim of relief." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedures* § 1401 (3d ed.2004). These principles have long since

been embodied in Rule 13 of the Federal Rules of Civil Procedure.[2] *See id.*

 On the factual record before this Court and in viewing the facts and reasonable inferences in the light most favorable to Mastercraft in opposing ABF's motion for summary judgment on its counterclaim, there is a factual dispute with respect to the understanding between the parties in the aftermath of the Brown Jordan shipments. In light of this factual dispute and the application of Maryland law with respect to recoupment and set-off, ABF's counterclaim is not ripe for summary judgment on the facts presently before this Court. Accordingly, ABF's motion for summary judgment on its counterclaim shall be denied and ABF shall proceed with the counterclaim in opposition to Mastercraft's claim arising out of the Brown Jordan shipments.

## CONCLUSION

For the reasons stated above, ABF's Motion for Summary Judgment on Count I of the Plaintiff's Complaint is DENIED, and ABF's Motion for Summary Judgment on its counterclaim is DENIED. A separate Order consistent with this Memorandum Opinion will follow.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 23rd day of December 2004, HEREBY ORDERED:

E. That the Motion for Summary Judgment (Paper No. 28) of Defendant ABF Freight Systems, Inc is DENIED;

F. That counsel are directed to contact Chambers, upon receipt of this Order, to set-up a conference call for further scheduling; and

G. That the Clerk of the Court transmit copies of this Order and accompanying Memorandum Opinion to counsel for both parties.

2. Rule 13(b) of the Federal Rules of Civil Procedure, entitled Permissive Counterclaims, states: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."